## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BRANDON JOHNSON,                  )
                                  )
      Plaintiff,              )
                                  )
-vs-                              )    Case No. CIV-14-0945-F
                                  )
OKLAHOMA DEPARTMENT OF            )
TRANSPORTATION, et al.,           )
                                  )
      Defendants.             )

## ORDER

All defendants move for summary judgment.  Doc. nos. 37, 38.  They are the Oklahoma Department of Transportation, Kevin Lowe and Bart Vleugels.  Plaintiff Brandon Johnson has responded, objecting to summary judgment.  Doc. no. 40, 41. Defendants filed a reply brief.  Doc. no. 42.

Plaintiff Brandon Johnson appeared *pro se* at the time he filed the complaint, but he has since acquired counsel. Construing the complaint liberally, it alleges employment discrimination and retaliation claims under Title VII[1] and 42 U.S.C. §1983.

### Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[1]The complaint does not cite Title VII, but the allegations pertain to employment-related discrimination and retaliation.  The briefs show that the parties understand this action as presenting Title VII claims.  The complaint references a statement which defendants allegedly made to the Equal Opportunity Commission in May of 2014.  Doc. no. 1, ¶ 37.  Per the complaint, the statement to the EEOC was that on the afternoon of January 9, 2014, defendants, along with Brian Kirtley, met and determined to discharge plaintiff effective January 10, 2014.

is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983). The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to avoid a properly supported summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Fact-Findings and Related Matters

The court finds the following facts for purposes of the motion.

At the time of the events in question, plaintiff Johnson was employed at the Oklahoma Department of Transportation (ODOT) as a Video Production Specialist I.

The final decision to hire Johnson was made jointly by defendants Lowe and Vleugels, the same individuals who, as will be seen, also made the decision to terminate Johnson.

The job posting sought one new employee.  However, during the application process, ODOT decided to hire two individuals.  Johnson was hired for one of the two positions.  Dylan Chaufty was hired for the other position.  Johnson was one of five persons interviewed for the position, and the only African American.  The other four interviewees were white. The race of the applicants was not a consideration during the application and hiring process.

Johnson began work on August 19, 2013.

As a Video Production Specialist I, Johnson's job responsibilities included developing and writing scripts for ODOT and ODOT partners by consulting and working with content experts.  Johnson was to produce, edit, and duplicate programs for ODOT.  The job required Johnson to work with people "in a professional and friendly environment, scheduling time, locations and assigning personnel." Doc. no. 38, at 3.  He was to manage multiple projects from beginning to end, performing duties of a videographer, of a video/audio engineer, and performing other technical crafts required for the production of video programs.  The job required Johnson to support planning and production of conferences and workshops, providing "audio-visual support and computer interaction" for conferences and workshops. *Id.* at 4.

Johnson was still on probationary status when he was terminated on January 10, 2014, less than five months after he began work.[2]

Johnson's direct supervisor was defendant Vleugels. Vleugels held the position of Video Production Specialist IV in the Office Services Division of ODOT.

---

[2]Per 74 O.S. Supp. 2012 § 840-4.13(D), a probationary appointment may be terminated during the one-year probationary period without right of appeal.

Vleugels' direct supervisor was Kevin Lowe. During Johnson's employment at ODOT, Lowe held the position of Assistant Division Manager of Training.  Lowe currently holds the position of Assistant Division Manager, Office Services Division.

Cynthia White was Lowe's superior at ODOT.[3]   Lowe had several meetings with White, who felt it was in the best interests of the agency to terminate Johnson's employment.

Brian Kirtley was the Human Resource Manager for ODOT.  Kirtley agreed with the decision to terminate Johnson and helped draft Johnson's termination letter.

Although others such as White and Kirtley may have participated to some degree, the final decision to terminate Johnson was made jointly by Lowe and Vleugels.

Johnson contends there is genuinely disputed evidence regarding the  date on which the termination decision was made.  However, as discussed below, the record establishes that the decision to terminate Johnson was made on January 9, 2014.  The date of this decision is important because the primary protected activity which Johnson claims prompted his retaliatory termination is Johnson's meeting with Internal Civil Rights Administrator Gregory Pringle.  Johnson's meeting with Pringle did not occur until the morning of January 10, 2014.

Lowe's affidavit states that he and Vleugels made the decision to terminate Johnson jointly, and that they did so on January 9, 2014.  On January 9, 2014, Lowe sent an email with a draft termination letter to Kirtley, who agreed with the decision.  The email confirms this sequence of events.  *See*, doc. no. 38-8, pp. 1, 2.  In the email, Lowe asks Kirtley for additions or changes to the attached document, which is a draft of a termination letter for January 10, 2014.  The email implicitly confirms various

---

[3]White is referred to in the undisputed facts portion of defendants' brief as both "the Division Manager" and "Training Division Manager."  Her exact title is not critical.

witnesses' direct testimony that the decision to terminate Johnson was made on January 9.

In an effort to create a genuine fact issue regarding the date of the termination decision, Johnson chiefly relies on two pieces of evidence. The first is an internal ODOT document approving Johnson's use of an ODOT vehicle for a video shoot scheduled for January 14, 2014. The face of the document shows it was received in the office of the Director of Operations on January 9, 2014, and was signed by the director and date-stamped on January 10, 2014. Doc. no. 41-1. The second piece of evidence which Johnson relies on is Lowe's deposition testimony. Lowe was asked: "So as a matter of courtesy, if nothing else, before you terminated somebody, you would communicate with Cynthia [White]?" Lowe answered, "As I said earlier, I'm not totally sure if you're talking about policy-wise. But I would do that, yes, as a courtesy." Plaintiff argues that on January 10, White or others would not have approved Johnson for future vehicle use if the decision to terminate Johnson had truly been made on January 9.

Lowe testified that he knew when he filled out the form that he was going to terminate Johnson, but that he was "keeping work as usual." Doc. no. 38-24, p. 60. Vleugels testified that beginning in the fall of 2013, he and Lowe had considered terminating Johnson's employment due to constant problems. Vleugels's affidavit states that he and Lowe decided to terminate Johnson on January 9, 2014, and that Vleugels worked with Kirtley (Human Resources Manager) on a draft letter of termination, as already discussed. Doc. no. 38-10, ¶ 19. Kirtley's affidavit and documentation are also consistent with this version of events. Doc. no. 38-15, ¶ 5.

On this record, Johnson's suggested inference (that the form's January 10 approval date suggests the decision to terminate him was not made on January 9) is, at best, a scintilla of evidence; it is directly and consistently contradicted by direct

testimony; and it does not create a genuinely disputed fact issue concerning the date on which defendants decided to terminate Johnson. The decision to terminate Johnson was made on January 9, 2014, to be effective on January 10, 2014. No reasonable jury could conclude otherwise on this record.

Moving on to other fact-findings, defendants have articulated legitimate reasons for the termination, and they did so at the time of termination. Defendants' stated reasons for the termination are set out in the draft termination letter which Lowe sent to Kirtley on January 9, 2014. That draft letter included the following statement. "We have concluded that you have not made an effort to be part of our team and that your passive aggressive behavior is hindering that team aspect that is so important in the Video branch. In the past, our instructions have been challenged, questioned or ignored and your behavior is unapproachable." Doc. no. 38-8. The final version of the termination letter effective on January 10, 2014, includes the following statement. "The primary reasons for this action are because we do not believe you have met expectations in becoming a part of the Video production team and the difficulties associated with giving you instruction. Your defensive behavior in accepting coaching and direction has hindered the team aspect that is vital to the branch. Routinely, supervisory instructions have been challenged, questioned or ignored. As a result, your employment will end on January 10, 2013." Doc. no. 38-19. The termination letter was signed by Lowe. *Id*.

Certain facts support defendants' stated reasons for terminating Johnson's employment. They include the following.

1. Johnson admits that he did not always follow suggestions regarding video production when suggestions were given to him by various people including Vleugels, and co-workers Dylan Chaufty and Mat Miller. Johnson testified that he did not feel

compelled to follow suggestions (as opposed to instructions).[4]  Johnson testified that he was aware of the frustration which his failure to follow suggestions caused other employees.

2.  Early on in Johnson's employment (September of 2013), there was a disagreement between Johnson and ODOT regarding the amount of Johnson's compensation.  The existence of the disagreement is documented by various emails and is not in dispute although the proper characterization of the emails is in dispute. Johnson contends defendants' description of these emails as presenting an "ultimatum" by Johnson, is an inaccurate characterization and constitutes evidence of pretext.

3.  In October of 2013, Johnson was assigned to the production of the Motor Grader training videos.  Despite attempts by Lowe and Vleugels to make sure that the requested "shot list" was fulfilled, Johnson failed to shoot enough video.  As a result, another video production was required, making additional work necessary for the video branch and the entire field division.

4.  Lowe met with Kirtley about Johnson on multiple occasions, receiving advice concerning what to do about Johnson and considering termination of Johnson. Both Lowe and Vleugels state in their affidavits that they were considering termination of Johnson because of what they considered to be constant problems Johnson was causing in the workplace.

Johnson contends the following events occurred and had racial implications. Some of these events, such as those described in paragraphs four and five, below, are disputed by defendants.  At this stage, the court has presumed the truth of Johnson's version of these (and any other genuinely disputed) events.

---

[4]In addition to Johnson's testimony, the complaint concedes that there were suggestions and recommendations which Johnson declined to follow.  The complaint alleges that Johnson did not have an obligation to accept suggestions or recommendations related to his assigned projects.

1. On January 9, 2014, Johnson walked into his supervisor's office, interrupting a conversation (not a formal meeting) which was occurring there. Johnson's purpose was to bring to his supervisor's attention the fact that the term "walk-around" had a racial implication. Doc. no. 41-4, ¶ 1.c. Vleugels had told Johnson to add the title "Daily Walk-Around" to a video. Johnson told Lowe and Vleugels that the term "walk around" "could possibly have a racial implication to some African American employees." *Id.* Johnson stated that the primary dictionary definition for the term relates to minstrel shows which were used to denigrate black culture. *Id.* Vleugels asked Johnson if the term was offensive to him personally, and Johnson said "no." Vleugels told Johnson to keep the title "Daily Walk-Around" because it was so commonly used at ODOT.

Documents show the term "walk-around" is standard in defendants' industry, and Johnson does not contend otherwise. "Walk-around" describes a 360-degree inspection of a vehicle or heavy equipment before operation of the equipment. Until Johnson claimed the term had racial connotations, Lowe had never heard of any racial connotation for the term. Johnson is the only person at ODOT who is known to have claimed a racial connotation for the term "walk-around."

2. After the "walk-around" complaint was made by Johnson to Lowe and Vleugels, Johnson complained to receptionist Arla McCarty about ODOT's (claimed) lack of racial sensitivity and (claimed) negative double-standards faced by Johnson. McCarty advised Johnson to talk to Gregory Pringle, an Internal Civil Rights Administrator for ODOT. Lowe and Vleugels had no knowledge of Johnson's complaint to McCarty.

3. Johnson met with Pringle on the morning of January 10, 2014, in a two-hour meeting in Pringle's office, beginning around 7:30 a.m. The court presumes at this

-8-

stage that Lowe and/or Vleugels knew that Johnson was in Pringle's office for two hours on the morning of January 10, 2014.

4. On one occasion, Lowe told Johnson that he "talked white."  Doc. no. 41-4, ¶1.a.

5. On another occasion, Johnson was listening to 1970's rock and roll when one of his supervisors said he was surprised Johnson listened to that music.  Johnson inferred that the speaker was indicating that African Americans did not usually listen to this type of music.

<u>Title VII Claims</u>

Lowe and Vleugels are entitled to summary judgment in their favor on Johnson's Title VII claims because the record establishes that Lowe and Vleugels are employees of ODOT, not employers.  Only employers are liable under Title VII.  *See*, <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996) (language and structure of Title VII reflect a legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors).

There is no direct evidence of race discrimination.  Therefore, the <u>McDonnell Douglas/Burdine</u> framework governs Johnson's Title VII race discrimination claim against ODOT.  <u>Stover v. Martinez</u>, 382 F.3d 1064, 1075-76 (10th Cir. 2004) (race discrimination under Title VII may be supported with indirect evidence analyzed under burden-shifting framework).

To present a *prima facie* case of race discrimination under Title VII, Johnson must identify evidence to show: 1) membership in a protected class, 2) that plaintiff suffered an adverse employment action, and 3) that the challenged action took place under circumstances giving rise to an inference of discrimination.  *See*, <u>EEOC v. PVNF, LLC</u>, 487 F.3d 790, 800-01 (10th Cir. 2007) (sex discrimination and retaliation case).  With regard to the second element, with the exception of Johnson's

termination, none of the other actions or conduct complained about by Johnson constitute an adverse employment action.  With respect to the third element, one way in which a plaintiff may meet his burden is by identifying evidence that similarly situated non-minority employees were treated differently.  *Id*.  Johnson has not identified any particular non-minority employees who were similarly situated yet were treated differently, and  conclusory allegations or statements in this regard are not enough.  Nor is there any other evidence to satisfy the third element.

Continuing through the burden-shifting analysis, if Johnson had established a *prima facie* case of race discrimination (which he has not), then, in response, ODOT has articulated legitimate, non-discriminatory reasons for Johnson's termination. These reasons are described in the fact-findings portion of this order.  As stated there, the gist of the draft termination letter and of the final version of the termination letter is that Johnson was discharged because he challenged directives and was not a team player.

Defendants' stated reasons for terminating Johnson shift the burden back to Johnson, who is required to identify evidence of pretext.  At this third-step of the analysis, Johnson has failed to identify evidence sufficient to show pretext.  Johnson has identified a handful of conversations or conduct which he contends implicate race. But the nature and number of these comments is insufficient to suggest pretext.

For example, there is nothing about the "walk-around" discussions which suggests that anyone at ODOT knew about or focused on the claimed racial component of that term.  Nor is there anything to indicate that ODOT focused on the racial component of Johnson's complaint about the use of the term "walk-round" when the decision was made to terminate Johnson.  At that point, there had been a continuing pattern of  behavior by Johnson which had rubbed other employees the wrong way for months.  Johnson relies on a characterization of one of Johnson's

emails to demonstrate pretext. Assuming that the email in question was mischaracterized as an "ultimatum," that mischaracterization is not enough to suggest pretext. Johnson admits he did not always follow suggestions given to him by his superiors. To explain this failure, Johnson distinguishes "suggestions" from "instructions." But that distinction does not change the fact that Johnson failed to follow suggestions and that he frustrated others -- all of which is consistent with defendants' stated reasons for Johnson's termination.[5] Moreover, the distinction pressed by Johnson (between a suggestion and an instruction) supports defendants' view that Johnson had trouble accepting coaching and direction. It is evident from Johnson's remarkably well-drafted *pro se* complaint that this matter of "suggestions" versus "instructions" (and his expressly-asserted legal right to disregard mere suggestions) assumed considerable significance for him. *See*, Complaint, doc. no. 1, at 3 (¶ 14) and 5 (¶ 18 – no "reasonable or legal obligation" to implement "any suggestions or recommendations"). On this point, the court cannot but note that one of the things that makes pleasant workplaces pleasant is the presence of superiors who have the good sense to give guidance by way of suggestions rather than instructions, working with subordinates who have the good sense to understand that it behooves them to comply with suggestions from superiors absent very good reasons to do otherwise.

Because Johnson has not established a *prima facie* case of discrimination, and alternatively because he has no evidence of pretext, ODOT is entitled to summary judgment in its favor on plaintiff's Title VII race discrimination claim.

---

[5]ODOT also presents evidence that a prior employer, the firm of Ackerman McQueen, terminated Johnson in December of 2011 after seven months of employment, citing Johnson's inability to follow the instructions of their creative directors. The court does not rely on this evidence because Johnson argues that the reasons for his termination are hearsay.

Johnson's retaliation claim under Title VII is also analyzed under a burden–shifting analysis. *See*, <u>Fye v. Oklahoma Corporation Commission</u>, 516 F.3d 1217, 1227-28 (Fye may prove her retaliation claim indirectly, invoking the <u>McDonnell Douglas</u> framework); <u>Stover v. Martinez</u>, 382 F.3d 1064, 1070 (10th Cir. 2004) (Title VII retaliation claim may be proven by indirect evidence, analyzed under the burden-shifting analysis).

A plaintiff must establish a *prima facie* case of retaliation by showing that: 1) he engaged in protected opposition to Title VII discrimination, 2) he suffered an adverse employment action, and 3) there is a causal connection between the protected activity and the adverse employment action. *See, id.* Thus, a retaliation claim under Title VII requires Johnson to show that he engaged in protected opposition to discrimination and that, as a result, he suffered a materially adverse action. <u>Burlington North & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

The only materially adverse action is Johnson's termination. The protected activity which Johnson primarily claims prompted his termination is Johnson's January 10, 2014 meeting with Gregory Pringle, an Internal Civil Rights Administrator for ODOT.[6] The court has already found that the decision to terminate

---

[6]Johnson's response brief repeatedly relies on his conversation with civil rights officer Pringle as the cause of his retaliatory termination. The complaint is somewhat broader. Doc. no. 1, ¶ 42. In addition to the meeting with Pringle, the complaint characterizes Johnson's conversation with Lowe and Vleugels on January 9 about the term "walk-around," as protected activity. But that was not a conversation about perceived unlawful discrimination. To constitute protected opposition, a plaintiff must show that when he engaged in protected opposition, he had a reasonable good faith belief that the opposed behavior was discriminatory. <u>Hertz v. Luzenac America, Inc.</u>, 370 F.3d 1014, 1015-16 (10th Cir. 2004). Johnson did not find ODOT's use of the term offensive, and no reasonable juror could conclude that ODOT's use of the term was discriminatory in these circumstances. The complaint also characterizes as protected activity the conversation which Johnson had with McArty on January 9. Uncontroverted evidence shows that McCarty was a receptionist, not a superior of the plaintiff. *See*, <u>Hertz v. Luzenac America, Inc.</u>, 370 F.3d 1014, 1015-16 (10th Cir. 2004) (protected opposition can range from filing formal charges to voicing informal complaints to superiors). Moreover, evidence is undisputed that the decision-makers with
(continued...)

Johnson was made by Lowe and Vleugels on January 9, 2014.  Accordingly, the decision to terminate Johnson cannot have been the result of protected activity which did not occur until January 10, 2014, and the third element of a retaliation claim (causal connection) is not satisfied.  *See*, Fye, 516 F.3d at 1228-29 (plaintiff can establish a causal connection by temporal proximity such as evidence that protected conduct was closely *followed* by adverse action; the agency's reasons, which included demands plaintiff made which caused a loss of confidence in her ability to work closely with others, were not pretextual).

Johnson has not established a *prima facie* case of retaliation in response to protected activity. In addition, defendants have articulated legitimate reasons for the termination, and there is no evidence of pretext.  ODOT is entitled to summary judgment on plaintiff's Title VII retaliation claim.

<u>Section 1983 Claims</u>

The court next considers Johnson's claims of race discrimination and retaliation alleged under 42 U.S.C. § 1983.  Defendants assert Eleventh Amendment immunity with respect to the § 1983 claims.  ODOT that argues it is an arm of the State of Oklahoma.  Lowe and Vleugels argue that the complaint should be construed as naming them in their official capacities only.  They point out that the complaint does not mention any individual capacity claims.  They argue that only official capacity claims are intended, based on allegations that each defendant is the agent and employee of each of the other defendants, and that each defendant was at all times acting within the purpose and scope of such agency and employment.  Doc. no. 1, ¶ 8.  Thus, Lowe and Vleugels argue that Johnson's § 1983 claims are barred by the Eleventh Amendment.  Alternatively, Lowe and Vleugels argue they are entitled to

---

[6](...continued)
respect to Johnson's termination were not aware of Johnson's conversation with McCarty. Accordingly, the conversation with McArty cannot have caused Johnson's termination.

qualified immunity.  Finally, all defendants argue they are entitled to summary judgment on the merits of the § 1983 claims because Johnson's evidence is insufficient.

In response to defendants' immunity arguments, Johnson's response brief makes only one argument.  He contends that none of the defendants are entitled to immunity because their acts were intentional.  Johnson does not specifically challenge ODOT's contention that ODOT is an arm of the State of Oklahoma.  Nor does Johnson specifically challenge defendants' characterization of the complaint as bringing only official capacity claims against Lowe and Vleugels.[7]  Based primarily upon Johnson's failure to dispute defendants' argument that only official capacity claims are alleged, the court finds that the course of these proceedings indicates the §1983 claims alleged against Lowe and Vleugels are official capacity claims only.

Congress did not abrogate states' Eleventh Amendment immunity when it enacted 42 U.S.C. §1983.  Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002).  ODOT is an arm of the State of Oklahoma.  See, Martin Marietta Materials, Inc. v. Kansas Dept. of Transportation, 953 F. Supp.2d 1176, 1185 (Kansas Department of Transportation is an arm or alter ego of the State of Kansas and is entitled to Eleventh Amendment immunity).  Contrary to Johnson's argument, intentionality does not abrogate Eleventh Amendment immunity.  ODOT is entitled to immunity.

Suits against state officials in their official capacity are regarded as suits against the official's office, and thus are treated as if they were suits against the state and

---

[7]Johnson's complaint seeks punitive damages.  In various circumstances, complaints which do not specify whether claims are alleged against defendants in their official or individual capacities have been held to allege individual capacity claims when punitive damages are sought.  See, Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993) (in discerning whether a lawsuit is against a defendant personally or in his official capacity, court noted plaintiff sued for punitive damages which are not available against the state).  However, the course of proceedings may also be determinative.  See, id.

subject to Eleventh Amendment immunity. *See, id.* at 1185-86, citing <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989), and other authorities. Treating the claims against Lowe and Vleugels as official capacity claims, these claims are precluded by the Eleventh Amendment.

Thus, all defendants are entitled to eleventh amendment immunity with respect to Johnson's §1983 claims.

Alternatively, the court recognizes the possibility that the complaint and course of proceedings should be construed as asserting not only official capacity claims but also individual capacity claims against Lowe and Vleugels.  But no constitutional violation has been shown as to Lowe or Vleugels, entitling these defendants to qualified immunity on any § 1983 claims arguably alleged against them in their individual capacity.  *See*, <u>Pearson v Callahan</u>, 555 U.S. 223, 232-34 (2009) (in evaluating qualified immunity, a court may determine whether facts make out a violation of a constitutional right, before determining whether the right at issue was clearly established at the time of defendant's alleged misconduct).

As a final, alternative ground for its § 1983 rulings, the court concludes that all three defendants are entitled to summary judgment on the § 1983 claims because the evidence does not support these claims on their merits.  The court reaches this conclusion based on the same reasoning it applied to the Title VII claims.  *See*, <u>Salguero v. City of Clovis</u>, 366 F.3d 1168, 1175-78 (10th Cir. 2004) (summary judgment for employer upheld; court evaluates § 1983 claims pursuant to the stepwise allocation of burdens of proof set out in <u>McDonnell-Douglas</u>).

Conclusion

Defendants' motion for summary judgment is **GRANTED**, as follows.

The Oklahoma Department of Transportation, Kevin Lowe and Bart Vleugels are **GRANTED** summary judgment in their favor on plaintiff's Title VII claims.

Construing the complaint and course of proceedings as asserting only official capacity claims against Lowe and Vleugels under § 1983, the court rules as follows on the § 1983 claims.  The Oklahoma Department of Transportation, as well as Kevin Lowe and Bart Vleugels sued in their official capacities, are immune to suit under the Eleventh Amendment.  All defendants are therefore **DISMISSED** without prejudice from these claims.  (The dismissal is without prejudice because this ground implicates a jurisdictional defect.)

Alternatively, if the complaint and course of proceedings should be held to assert individual capacity claims against Lowe and Vleugels, then Kevin Lowe and Bart Vleugels are entitled to qualified immunity, and thus, summary judgment in their favor, on any such individual capacity claims.

In the further alternative, all three defendants are entitled to summary judgment on the merits of the § 1983 claims, for lack of evidentiary support.

The short of the matter is that the noble purpose – and, more to the point here, the legal effect – of the employment discrimination laws is to provide an effective remedy to those who are on the receiving end of racial discrimination; no protection is afforded to individuals who, like this plaintiff, can show nothing more than a chip on a shoulder or a noticeable propensity to seek victim status where no factual basis for that status exists.

Dated this 3rd day of August, 2015.


_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0945p006.wpd