IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRANDON JOHNSON, )
)
                 Plaintiff, )
)
vs. ) Case No. CIV-14-945-F
)
OKLAHOMA DEPARTMENT OF )
TRANSPORTATION; KEVIN LOWE, )
VIDEO BRANCH MANAGER; )
BART VLEUGELS, VIDEO BRANCH )
SUPERVISOR, )
)
                Defendants. )

## DEFENDANT KEVIN LOWE'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Kevin Lowe answers Plaintiff's First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:** Between May 30, 2013 and August 19, 2013, please identify the number of vacant Video Production Specialist I positions were available for hire within the Video Production Branch at the Oklahoma Department of Transportation (ODOT). Please also state whether you have in your possession or control any documents or records indicating the aforementioned number of Video Production Specialist I vacancies, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 1:** The job posting was identified for one person. During the process, ODOT decided to hire two people. See Response to Interrogatory No. 3 below. See also the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 2:** Prior to August 19, 2013, did you inform the Plaintiff

ATTACHMENT 2

or any of his work references that only one vacant Video Production Specialist I position was available for hire within the Video Production Branch at ODOT?

**RESPONSE TO INTERROGATORY NO. 2:** I have no memory of any such discussion.

**INTERROGATORY NO. 3:** Please explain why the Plaintiff and Dylan Chaufty were both hired as Video Production Specialists I within the Video Production Branch at ODOT.

**RESPONSE TO INTERROGATORY NO. 3:** There were plans that another person would be hired in addition to the advertised vacancy at a future date. After the interviews, I felt we had two equally good candidates and requested to hire both candidates at the same time. This request was granted by HR. <u>See also</u> the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 4:** Were you obligated to hire the Plaintiff due to his Veteran's Status and/or Veteran's Preference Points? If no, please explain why.

**RESPONSE TO INTERROGATORY NO. 4:** No. No Veteran Points were listed for the Plaintiff on the certificate.

**INTERROGATORY NO. 5:** With Veteran's Preference Points included, please identify the Plaintiff's final score for the vacant Video Production Specialist I position in the Scores Report for Applicant.

**RESPONSE TO INTERROGATORY NO. 5:** No Veteran Points were given. See Response to Interrogatory No. 6 below.

2

**INTERROGATORY NO. 6:** Please identify Dylan Chaufty's final score for the vacant Video Production Specialist I position in the Scores Report for Applicant?

**RESPONSE TO INTERROGATORY NO. 6:** Dylan Chaufty: 85.5 (#2 on the State of OK Certified List); Brandon Johnson: 74.4 (#9 on the State of OK Certified List). The list is provided by the Oklahoma Office of Personnel Management (now called the Human Capital Development Division of the Office of Management and Enterprise Services).

**INTERROGATORY NO. 7:** Were you obligated to hire the Plaintiff due to any Federal, State, or ODOT affirmative action plans? If no, please explain why.

**RESPONSE TO INTERROGATORY NO. 7:** No.

**INTERROGATORY NO. 8:** Specifically, please identify all the expectations that the Plaintiff failed to meet in becoming a part of the Video Production Branch. Please also state whether you have in your possession or control any documents or records indicating the aforementioned expectations, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 8:** Anytime the Plaintiff was given direction, he discounted the direction and/or coaching given and responded by saying "It's OK" or "Don't worry about it." This was a recurring pattern with Mr. Johnson. Even after the Plaintiff was told to bring a video monitor to the location video recording, he argued that he did not need a video monitor. When I told Mr. Johnson that it was required, he did bring the video monitor to the location but did not use it. He only used it when I brought it to his attention that that is what I wanted. Mr. Johnson replied that he could do it by what he could

3

see with his own eyes. I replied that "I don't care what your eye sees. I want to know what the camera sees and records and the monitor is the way to do that."

When Mr. Johnson was assigned responsibility for certain projects, he not only did not take input from his manager or supervisor, he **shunned any input from experienced co-workers.**

In September 2013, Mr. Johnson accused his supervisors of incorrect compensation. According to Mr. Johnson, he was misled during the interview that he was promised more compensation than what he was receiving. Instead of taking an attitude of trying to understand his paycheck, Mr. Johnson took the stance of being wronged. He even gave his supervisors an ultimatum of how to resolve the pay differential of either paying him more or working less. **In trying to help Mr. Johnson understand the differential, approximately five emails were sent. After the emails, Mr. Johnson had a face-to-face meeting with me (the Assistant Training Division manager), followed by a meeting with Cynthia White (Training Division Manager), and finally, a meeting with Brian Kirtley (Human Resources Division Manager).** Throughout this process, Mr. Johnson showed the attitude that everybody was wrong except himself and the agency needed to find a resolution. Even after Mr. Johnson begrudgingly had to accept the explanation, he did not appear convinced that he was incorrect in his salary calculation.

In October 2013, Mr. Johnson was assigned the production of the Motor Grader training videos. As part of the normal production process, Mr. Johnson was to provide Bart Vleugels (Mr. Johnson's direct supervisor) a shot list of everything Mr. Johnson was going

4

to videotape. Mr. Johnson was given an example (both written and verbal) of another script to show how the script and shot list should be constructed. Mr. Johnson did not follow these instructions. At my request, **Mr. Vleugels asked Mr. Johnson for the shotlist several times (via email and verbally) before the shoot, but did not receive it.** Even as the production had already begun, Mr. Vleugels had still not received the requested shot list. When Mr. Vleugels asked Mr. Johnson how he was going to determine what shots to get, Mr. Vleugels was told by Mr. Johnson in a condescending tone "don't worry" and that "it's OK." During the entire production, Mr. Johnson refused any type of coaching from me and Mr. Vleugels, who have a combined video production experience of 50 years. Mr. Johnson showed an attitude that indicated that he knew what he was doing and that Mr. Vleugels and I did not. Because of the size of this production, the other Video Branch employees were present to assist.

On the first day, his colleagues would make recommendations and suggestions to improve the production, but Mr. Johnson discounted their advice. **The employees gradually gave up any interaction with Mr. Johnson as a result. Mr. Johnson continued to refuse any coaching from his superiors as well.**

Through my experience as a Video Specialist, it appeared to me that Mr. Johnson was not getting enough shots to cover the script. However, I was reassured by Mr. Johnson not to worry about it. During the editing process, it became blatantly apparent that Mr. Johnson did indeed not shoot enough video. As a result, another video production was required, which resulted in additional work of the video branch and additional requirements of the workers, their heavy equipment and the entire field division.

On January 9, 2014, Mr. Johnson confronted Mr. Vleugels and I about a script change that he requested. Instead of trying to make a change, he repeatedly interrupted a meeting I was having with Mr. Vleugels.

Additionally, Mr. Vleugels had told Mr. Johnson to add the title "Daily Walk-around" to the video. The word "walk-around" is an industrial standard definition to describe a 360 degrees inspection of a vehicle or heavy equipment before operation of the equipment. Mr. Johnson told me and Mr. Vleugels that the word "walk-around" has a racial implication, was racially offensive, and that it indicated a racial undertone used in 1859. Mr. Vleugels asked Mr. Johnson if the word walk-around offended him and he answered "no." Mr. Vleugels then told Mr. Johnson to keep the title "Daily Walk-around" because the word is so commonly used at ODOT.

It is the duty of a producer to write the script (with general instructions of the supervisor). I did not give Mr. Johnson the exact wording he was looking for; instead I wanted him to "wordsmith" my script suggestion. However, Mr. Johnson wanted to be given descriptive words. Mr. Johnson started arguing that Mr. Vleugels was contorting own words. Mr. Johnson did not try to resolve the problem; instead he felt that he was the only person who was right.

In sum, Mr. Johnson, as was described above, failed to perform and complete his job duties satisfactorily. See also the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 9:** Specifically, please identify all the difficulties that you

6

had or observed in giving the Plaintiff instructions. Please also state whether you have in your possession or control any documents or records indicating the aforementioned instructions, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 9:** See Response to Interrogatory No. 8. Additionally, here are the job duties of a Video Production Specialist 1 as written on Mr. Johnson first PMP:

"Develop and write scripts for ODOT and ODOT partners by consulting and working with content expert(s). This includes working with and interviewing various personnel, literature searched and on-site observation. Produce, edit, and duplicate programs for ODOT, including DVD label design. This includes working with people in a professional and friendly environment, scheduling time, locations and assigning personnel. Manage multiple projects from beginning to end. Perform the duties of a videographer, video/audio engineer or other technical craft as required for the production of video programs. Support the planning and production of conferences and workshops as required, which may include all audio-visual support and computer interaction. Must be done as conference and workshops are scheduled, 95% of the time."

**INTERROGATORY NO. 10:** Specifically, please identify how the Plaintiff failed to accept your informal verbal counseling sessions and directions. Please also state whether you have in your possession or control any documents or records indicating the aforementioned informal verbal counseling sessions, and attach a copy of any such

7

documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 10:** See Response to Interrogatory No. 8.

**INTERROGATORY NO. 11:** With respect to the terms and conditions of his employment, was the Plaintiff legally obligated to follow your suggestions or recommendations, regarding his assigned projects? If yes, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned terms and conditions of employment, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 11:** Defendant objects to this Interrogatory because it asks for a legal opinion. Defendant otherwise states that employees are required as part of their employment to follow assignments and guidance provided by their managers and/or supervisors. See also the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 12:** With respect to the terms and conditions of his employment, was the Plaintiff legally obligated to follow the suggestions or recommendations of his Video Production Branch co-workers, regarding his assigned projects? If yes, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned terms and conditions of employment, and attach a copy of any such documents or records to your answers to these interrogatories.

8

**RESPONSE TO INTERROGATORY NO. 12:** Defendant objects to this Interrogatory because it asks for a legal opinion. Defendant otherwise states that employees are required as part of their employment to follow assignments and guidance provided by their managers and/or supervisors. See also the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT. Defendant otherwise that that as his supervisor, **I told Mr. Johnson to get input from his coworkers** who had much more experience, not only in video production but also on-the-job experience. The Video Production Branch works closely as a team to get input from all team members to deliver the best possible product. **Mr. Johnson continued to ignore** any input given by anybody and simply stated "I got this." Because of this behavior, and the other behavior noted in the above Response to Interrogatory No. 8, the other Video Production specialists realized that any input they gave was refused and were told by Mr. Johnson that he had it under control. Ms. Johnson's behavior also hurt the moral of the team with which he was working.

**INTERROGATORY NO. 13:** Between August 19, 2013, and January 10, 2014, with respect to the terms and conditions of their employment, were the Plaintiff's Video Production Branch co-workers legally obligated to follow your suggestions and recommendations, regarding their respectively assigned projects? If yes, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned terms and conditions of employment, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 13:** Defendant objects to this

9

Interrogatory because it asks for a legal opinion. Defendant otherwise states, see Response to Interrogatory No. 8, and the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 14:** Between August 19, 2013, and January 10, 2014, with respect to the terms and conditions of their employment, were the Plaintiff's Video Production Branch co-workers legally obligated to follow the Plaintiff's suggestion or recommendations, regarding their respectively assigned projects? If yes, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned terms and conditions of employment, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 14:** Defendant objects to this Interrogatory because it asks for a legal opinion. Defendant otherwise states, see Response to Interrogatory No. 8, and the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 15:** With respect to the terms and conditions of his employment, was the Plaintiff legally obligated to agree with the allegations and assertions raised in any informal verbal counseling session? If yes, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned terms and conditions of employment, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 15:** Defendant objects to this

Interrogatory because it asks for a legal opinion. Otherwise, see Responses to Interrogatory Nos. 8, 11 and 14, and the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 16**: Between August 19, 2013 and January 10, 2014, identify the explanations you gave to the Plaintiff about the differences between your directions, instructions, suggestions, and recommendations. Please also state whether you have in your possession or control any documents or records indicating the aforementioned explanations, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 16**: See Responses to Interrogatory Nos. 8, 11 and 14, and the documents produced by ODOT in response to Plaintiff's First Request for Production to ODOT.

**INTERROGATORY NO. 17**: Between August 19, 2013 and January 10, 2014, did you assign and grant the Plaintiff with creative leadership responsibilities over the Motor Grader Training Video and its related production with the limitations of presenting accurate information and keeping the audience's attention? If no, please explain why, and state whether you have in your possession or control any documents or records indicating the aforementioned assignment, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 17**: Bart Vleugels assigned Mr. Johnson's responsibilities. Some creative leeway was given to the Plaintiff, but he did not

11

have complete freedom. His work still had to approved by the supervisor, and it had to conform to the style of the series.

**INTERROGATORY NO. 18:** Please identify the ODOT employee who was ultimately responsible for the production, creative direction, creative content, and creative expression of the Motor Grader Training Video. Please also state whether you have in your possession or control any documents or records indicating the aforementioned responsibility, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 18:** Mr. Johnson was the lead on the Motor Grader video project, which includes contacting the content expert, writing scripts that meet the needs of the agency, location scouting, scheduling, assigning of job duties of other Video Production specialists for this project. Identifying and acquiring any video equipment tools needed to complete the production of the project. Additionally video post-production, approval from client (content expert as well as supervisor), if needed acquire additional footage, script changes to assure correctness and to satisfy his supervisor's vision of the ODOT Heavy equipment operator's video series' "look" for which the ODOT Video Branch has come to be known. **The management is still ultimately responsible for the project.**

**INTERROGATORY NO. 19:** Please identify all the dates, types, and levels of disciplinary actions that you have imposed upon the Plaintiff between August 19, 2013, and January 10, 2014. Please also state whether you have in your possession or control any documents or records indicating the aforementioned disciplinary actions, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 19**: No formal disciplinary action was taken. Instead, constant coaching was given to try to develop Mr. Johnson as a good member of the Video Branch team. No progressive action was required or taken.

**INTERROGATORY NO. 20**: To date, please identify all the dates, types, and levels of disciplinary actions that you have imposed upon ODOT Video Production Branch Employees Dylan Chaufty, Matt Miller, and Eric Leslie. Please also state whether you have in your possession or control any documents or records indicating the aforementioned disciplinary actions, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 20**: No formal disciplinary action was taken towards the other Video Production branch employees. Constant coaching and directions are given on a daily bases to all Video employees.

**INTERROGATORY NO. 21**: Please identify the date, time, your location, and the persons in your company when you made the final determination to discharge the Plaintiff. Please also state whether you have in your possession or control any documents or records indicating the aforementioned final determination, and attach a copy of any such documents or records to your answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 21**: Office of the ODOT Director of Human Resources. The decision to terminate Mr. Johnson's employment was made on Thursday, January 9, 2014 by myself, Mr. Kirtley and Mr. Vleugels. A draft was produced and emailed by Mr. Vleugels to Mr. Kirtley. Mr. Kirtley made his corrections and it was sent

back to Mr. Vleugels. Mr. Vleugels then finalized the document. Myself, Mr. Vleugels and Mr. Kirtley decided that it would be the most comfortable for all parties to terminate Mr. Johnson shortly before lunch on the morning of January 10, 2013, when the other Video employees would not be in attendance at that time.

**INTERROGATORY NO. 22:** With regard to the date that you made the final determination to discharge the Plaintiff, in detail, please identify and describe the events, circumstances, behaviors, and actions of or relating to the Plaintiff that directly or indirectly effected, influenced, and motivated to you make the aforementioned final determination to discharge the Plaintiff on the aforementioned dated.

**RESPONSE TO INTERROGATORY NO. 22:** The following is the wording of Mr. Johnson's termination memorandum:

"The Oklahoma Department of Transportation has decided to terminate your employment during your probationary period. This action is taken in accordance with Merit Rule 530:10-11-32 that states that the probationary appointment of any person may be terminated at any time during the probationary period without the right of appeal.

The primary reasons for this action are because we do not believe you have met expectations in becoming a part of the Video production team and the difficulties associated with giving you instruction. Your defensive behavior in accepting coaching and direction has hindered the team aspect that is vital to the branch. Routinely, supervisory instructions have been challenged, questioned or ignored. As a result, your employment will end on January 10, 2013."

14

The decision was made based on Mr. Johnson's actions throughout his employment. See Response to Interrogatory No. 8.

**INTERROGATORY NO. 23:** Please identify the person or persons responding to these interrogatories served on Defendant Kevin Lowe. Please also identify in your answer each person who has provided information in connection with these interrogatory answers.

**RESPONSE TO INTERROGATORY NO. 23:** Bart Vleugels, Brian Kirtley and myself.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2015.

_____
Kevin Lowe

Respectfully submitted,

*/s/ David W. Lee*

David W. Lee, OBA # 5333
W. Brett Behenna, OBA # 30485
COLLINS ZORN & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
(405) 524-2070/Fax: (405) 524-2078
david@czwglaw.com
brett@czwglaw.com

ATTORNEY FOR DEFENDANTS
Tamar Graham Scott, OBA # 10606
Deputy General Counsel
Oklahoma Dept. of Transportation
200 N.E. 21st Street
Third Floor, Room B-7
Oklahoma City, OK  73105-3204
(405) 521-2635/Fax:  (405) 524-7704
tscott@odot.org

ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

This is to certify that on April 6, 2015, a copy of this document was emailed and mailed, by certified mail, return receipt requested, to:

Troy Gaston
Walters, Gaston, Allison & Parker
1405 West Center, Third Floor
Greenwood, AR  72936

*/s/ David W. Lee*

David W. Lee

16